UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARIE D. RICHARDSON,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civ. No. 16-8279 (KM)

OPINION

## KEVIN MCNULTY, U.S.D.J.:

Ms. Marie D. Richardson brings this action pursuant to 45 U.S.C. 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI"), 42 U.S.C. § 1381. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

## I. BACKGROUND

Ms. Richardson seeks to reverse a finding that she did not meet the Social Security Act's definition of disability from July 28, 2011 to May 29, 2015. (Pl. Br. 1).[1] Ms. Richardson applied for DIB and SSI on March 15, 2013. (R. 29). In both applications, Ms. Richardson alleged disability beginning July 7, 2007. (R. 29). She alleges disabilities relating to her knees, lower back, and

---

[1] Citations to the record are abbreviated as follows:
"R." = Administrative Record (ECF no. 8)
"Pl. Br." = Brief in Support of Plaintiff Marie D. Richardson (ECF no. 16)

1

mental health. (R. 32-40); (Pl. Br. 2-6). These claims were denied initially on May 31, 2013, and upon reconsideration on September 16, 2013. (R. 29, 145-53).

On November 4, 2013, Ms. Richardson filed a written request for a hearing. (R. 29). She appeared and testified at a hearing on March 31, 2015 in Newark, New Jersey. (R. 29). The attendees at the hearing were ALJ Theresa Merrill, vocational expert ("VE") Tanya M. Edghill, claimant's non-attorney representative Mario Davila, and claimant's attorney John Fort. (R. 29).

At the time of the hearing, Ms. Richardson requested to amend her alleged onset date from July 7, 2007 to July 28, 2011. (R. 29). The ALJ granted Ms. Richardson's request. (R. 29). On May 29, 2015, The ALJ issued a decision finding that Ms. Richardson was not disabled as defined by the Social Security Act. (R. 29-42).

On September 1, 2016, the Appeals Council denied Ms. Richardson's request for review, (R. 1-4), rendering the ALJ's decision the final decision of the Commissioner. Ms. Richardson then appealed to this Court, challenging the ALJ's determination that she was not disabled from July 28, 2011 to May 29, 2015. (Pl. Br. 2).

## II. DISCUSSION

To qualify for DIB or SSI, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining

2

whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will

"determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly

4

weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Theresa Merrill followed the five-step process in determining that Ms. Richardson was not disabled from July 28, 2011 (the alleged onset date) to May 29, 2015 (the date of her hearing). Her findings may be summarized as follows:

**Step One:** At step one, the ALJ determined that Ms. Richardson had not engaged in substantial gainful activity since July 28, 2011, the alleged onset date. (R. 32).

**Step Two:** At step two, the ALJ determined that Ms. Richardson had the following severe impairments: degenerative joint disease of the knees bilaterally, degenerative disc disease of the lumbar spine, obesity, adjustment disorder, and bipolar disorder. (R. 32).

**Step Three:** At step three, the ALJ found that Ms. Richardson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1 (R. 32).

**Step Four:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Ms. Richardson had the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally push and pull with the bilateral lower extremities; able to occasionally climb ramps and stairs; occasionally balance or stoop; never climb ladders, ropes, or scaffolds; never kneel, crouch, or crawl; able to frequently reach overhead with the bilateral upper extremities and frequently push and pull with the bilateral upper extremities; must avoid even moderate exposure to hazards; would be off task 5 percent of the work day because of pain and lapses in concentration; would be absent one day per month because of the impairments and the effects of medication; would be able to understand, remember, and carry out simple instructions; would be able to adapt to routine

5

changes in the work place that are occasional and that are
gradually introduced.

(R. 34-35).

The ALJ also determined that Ms. Richardson was unable to perform any past relevant work as a Material Handler (Dictionary of Occupational Titles ("DOT")# 929.687-030). (R. 40). The demands of this job exceed her residual functional capacity. (R. 40).

**Step Five:** At step five, the ALJ considered Ms. Richardson's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines. (R. 40-42). The Medical-Vocational Guidelines are tables that set forth presumptions of whether significant numbers of jobs exist in the national economy for a claimant. 20 C.F.R. Pt. 404, subpt. P, app. 2. These presumptions vary based on a claimant's age, education, work experience, and work capability. *Id.* The ALJ determined that Ms. Richardson has been able to perform jobs existing in significant numbers in the national economy since July 28, 2011. (R. 41-42). Relying on the testimony of VE Tanya M. Edghill, the ALJ identified several representative jobs that Ms. Richardson could perform despite her limitations: compact assembler (DOT# 739.687-066); preparer (DOT# 700.687-062); and table worker (DOT# 739.687-182). According to the VE, there are over 390,000 such jobs available nationally. (R. 41).

Therefore, the ALJ ultimately determined that Ms. Richardson was "not disabled" under the Social Security Act. (R. 42).

### C. Analysis of Ms. Richardson's Appeal

Ms. Richardson challenges ALJ Merrill's determination that she has not been disabled since July 28, 2011. She claims that the ALJ committed errors at steps two, three, four, and five. (Pl. Br. 9-14).

At step two, Ms. Richardson argues that the ALJ omitted or ignored severe impairments. (Pl. Br. 14-17). At step three, Ms. Richardson contends that the ALJ did not discuss medical equivalents, did not consider a combination of impairments, and did not consider obesity. (Pl. Br. 17-26). At step four, Ms. Richardson argues that the RFC is "unexplained," rejects the

6

opinion of treating physicians, ignores plaintiff's medically prescribed cane, analyzes pain in "boilerplated fashion," and "announces capacities without any evidence recited in support." (Pl. Br. 26-41). At step five, Ms. Richardson contends that the ALJ did not properly convey all of her credibly established limitations to the VE. I will discuss the ALJ's evaluation at each step.

### 1. The ALJ's Step Two Evaluation

At step two, the ALJ found that Ms. Richardson's severe impairments included degenerative joint disease of both knees, degenerative disc disease of the lumbar spine, obesity, adjustment disorder, and bipolar disorder. (R. 32). Ms. Richardson argues that ALJ Merrill erred in step two by ignoring or omitting severe impairments. (Pl. Br. 14-17).

The ALJ noted that "[t]here are also references to other isolated conditions such as a history of ovarian cysts, status post hysterectomy, fibroids, GERD, etc." (R. 32). Nonetheless, the ALJ found that these other impairments were non-severe. (R. 32). "These impairments were diagnosed only 'by history' and not definitively." (R. 32). Alternatively, the ALJ states that these impairments were resolved with appropriate treatment or never lasted for twelve continuous months. (R. 32). At the end of the step-two analysis, the ALJ states that "[T]he undersigned as given full consideration to all impairments in the record. Any impairment not specifically discussed in this decision is found to be non-severe." (R. 32).

Ms. Richardson argues that the ALJ did not properly consider all of her impairments, and particularly hypertension, at this stage. (Pl. Br. 16). She cites a Social Security program policy statement providing that adjudicators must carefully evaluate whether an impairment is severe:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities ....

7

*Titles II & XVI: Medical Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985). She argues that, without further analysis, the court cannot determine if the findings are supported by substantial evidence in the record. (Pl. Br. 16-17).

Ms. Richardson's arguments regarding the ALJ's step-two analysis are unavailing. First, the claimant has the burden of proof at step two to prove that a disability is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. § 404.1512(a) (stating that the claimant must furnish medical and other evidence that the adjudicator can use to reach conclusions about the claimant's medical impairments). Ms. Richardson did not furnish evidence to show that her hypertension is severe—*i.e.*, that it "significantly limits [her] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c). Ms. Richardson's hearing testimony and the opinion of a medical doctor, stating that her hypertension is "well controlled" on medications, do not reflect a severe impairment. (R. 78-79, 431, 458). This is also true regarding Ms. Richardson's abdominal pain from ovarian cysts, which says she feels "once in a blue moon." (R. 79). These impairments do not appear to significantly limit her basic work activities and Ms. Richardson does not meet her burden of proving that these impairments are severe.

Second, even if the ALJ's determination that Ms. Richardson's hypertension or other impairments are not severe was in error, it would be a harmless error because the ALJ erred on the side of leniency in considering them at step four. When an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the outcome of the case. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007); *see Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005). Any error here would be harmless because the medical record does not indicate that the omitted impairment impacts her ability to perform basic work

functions and because the ALJ discussed the impairment when considering the RFC in any event.

In particular, the ALJ addressed Ms. Richardson's hypertension at a later stage of the analysis:

> Regarding the claimant's hypertension, on July 27, 2011, Bernadette Cracchiolo, M.D. diagnosed the claimant with hypertension, but indicated it was well controlled. (Ex.4F/49). Nonetheless, the records show that the claimant's condition is chronic and that it requires daily medication. The notes from May 22, 2014 states that the claimant should take Amlodipine Besylate daily for her hypertension. (Ex.9F/1). The records also show that smoking can contribute to her hypertension. (Ex.1F/9). The undersigned further considers the claimant's daily smoking habit when assessing her hypertension as a severe impairment. (testimony).

(R. 37). This medical opinion constitutes substantial evidence that Ms. Richardson's hypertension is not a severe impairment.

In the end, the ALJ's determination that Ms. Richardson's hypertension was not a severe impairment was supported by substantial evidence. Even if her step-two analysis was not fully developed, any error was harmless. Substantial evidence and analysis of Ms. Richardson's hypertension in connection with her RFC establish that it does not significantly impact her basic work functions. Given the standard of review, I will uphold the ALJ's step-two findings.

### 2. The ALJ's Step Three Evaluation

At step three, the ALJ found that Ms. Richardson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1 (R. 32). Ms. Richardson argues that the ALJ erred at step three by failing to address medical equivalents, her combination of impairments, and obesity. (Pl. Br. 17-26).

9

### i. Discussion of Obesity

At step two, the ALJ found that Ms. Richardson's obesity was a severe impairment. (R. 32). However, the ALJ failed to consider the cumulative and additional effects of Ms. Richardson's obesity when determining if she qualified for one of the listed impairments. The ALJ provides a one-paragraph discussion of Ms. Richardson's obesity at step three. The paragraph states in full:

> The undersigned has given consideration to Social Security Ruling 02-1p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairment identified.

(R. 33). This paragraph references SSR 02-1p, the then–controlling policy guidance on obesity and listed impairments. However, this paragraph does not satisfy the ALJ's obligation to consider whether obesity, in conjunction with other impairments, equals a listing.

Obesity is no longer a listed impairment, but ALJs must "consider [obesity's] effects when evaluating disability" and recognize that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (S.S.A. 2002). Specifically, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.*

Obesity is also mentioned as a potential exacerbating factor in several listings. For instance, Listing 1.00, concerning musculoskeletal disorders, states that:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with

10

musculoskeletal impairments can be greater than the effects of
each of the impairments considered separately. Therefore, when
determining whether an individual with obesity has a listing-level
impairment or combination of impairments, and when assessing a
claim at other steps of the sequential evaluation process, including
when assessing an individual's residual functional capacity,
adjudicators must consider any additional and cumulative effects
of obesity.

20 C.F.R. Pt. 404, subpt. P., app. 1, ¶ 1.00Q.

The ALJ's discussion of obesity as step three does not show sufficient analysis. The ALJ notes that she "gives consideration to Social Security Ruling 02-1p," but does not actually address whether Ms. Richardson's obesity compounds her other impairments so that her impairments meet or equal a listed impairment. "[I]t is the ALJ's responsibility ... to identify the relevant listed impairment(s) and develop the arguments both for and against granting benefits." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151-52 (3d Cir. 2008) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000)) (internal quotations omitted); *see also* SSR 02-1p.

### ii. Harmless Error

Nonetheless, Ms. Richardson bears the burden of proving that her impairments equal or meet the listed impairments. She "does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). She makes a sterile claim of error, but offers no explanation of how further analysis could have changed the outcome of her claim. *See id.*

"Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Id.*; *see Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). While a positive finding at step three would have eliminated the need to proceed through steps four and five, Ms. Richardson does not offer an explanation, based on the evidence of record, of how she might have prevailed at step three if the ALJ's analysis had been more thorough. *See Holloman*, 639 F. App'x at 814-815 (finding harmless error

11

at step three because the appellant, who bears the burden to demonstrate harm, does not offer "how Holloman might have prevailed at step three if the ALJ's analysis had been more thorough"); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand ....").

Ultimately, the ALJ should have more closely examined the additional or cumulative effects of Ms. Richardson's obesity when determining, at step three, whether her impairments equal or meet the listed impairments.[2] However, Ms. Richardson does not suggest how the outcome would have been different if the ALJ had been more thorough. Given that the ALJ's step-four evaluation is supported by substantial evidence, any error at step three was harmless.

### 3. The ALJ's Step Four Evaluation

At step four, Ms. Richardson argues that the RFC is "unexplained," rejects the opinion of treating physicians, ignores plaintiff's medically prescribed cane, analyzes pain in "boilerplate[] fashion," and "announces capacities without any evidence recited in support." (Pl. Br. 26-41). Ms. Richardson specifically argues that (i) the ALJ erred in determining that she can perform sedentary work, especially given her need to use a cane; (ii) the ALJ did not fully credit her subjective complaints of physical pain; and (iii) the ALJ did not appropriately address her mental limitations when determining the RFC.

#### i. Sedentary Work

Ms. Richardson argues that the ALJ erred in finding that she can perform sedentary work, particularly because she needs to use a cane. (Pl. Br.

---

[2] It appears that the ALJ considered the effects of Ms. Richardson's obesity at a later stage. At step four, the ALJ "further limit[ed] the claimant to less than the full range of sedentary considering the combined effect of her obesity with other severe impairments" beyond the limitations suggested by Dr. Chopra, a state agency physician. (R. 39).

12

33). Ms. Richardson's treating physician, Dr. Kabiawu, advised that she use a single-point cane to help her ambulate. (R. 497-98, 617). However, Dr. Kabiawu's analysis was a check mark on a preset form. (R. 497-98, 617). Such check-box forms are weak evidence at best. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.... [W]here these so-called reports are unaccompanied by thorough written reports, their reliability is suspect." (internal quotation marks omitted)).

The ALJ identified several pieces of evidence to support the conclusion that Ms. Richardson could perform certain sedentary work. The ALJ noted Ms. Richardson's testimony that she generally uses a cane, but sometimes does not, because it makes her left leg hurt more. (R. 35, 66). Additionally, Dr. Khurana, a state agency physician, determined that Ms. Richardson could perform sedentary work. (R. 117-18). This could include standing or walking (with normal breaks) for up to 2 hours, and sitting (with normal breaks) for 6 hours, in an 8-hour workday. (R. 117-18). Moreover, Dr. Chopra, another state agency physician, found that Ms. Richardson could stand or walk with normal breaks for about 2 hours and sit with normal breaks for about 6 hours in an 8-hour workday. (R. 38).

Ms. Richardson argues that the ALJ did not make specific references to the record in support of assessed limitations and, instead, substituted her own judgment for the expertise of physicians with medical evidence. (Pl. Br. 28). However, the ALJ discussed Dr. Khurana and Dr. Chopra's opinions and adopted their limitations. (R. 38-39). The ALJ also discussed Dr. Kabiawu's opinion, gave it partial weight, and addressed particular reasons why she did not adopt his opinion wholesale. (R. 38). For example, Dr. Kabiawu did not provide any reasons or evidence to support his opinion that Ms. Richardson would need to take unscheduled breaks every 30 minutes for at least an hour. (R. 38). Given that two state agency physicians presented different opinions and evidence, the ALJ was permitted to not fully credit Dr. Kabiawu's recommendations.

13

Accordingly, the ALJ assessed that Ms. Richardson could perform sedentary work. (R. 34-35). This determination is supported by substantial evidence from Dr. Khurana and Dr. Chopra's medical opinions.

### ii. Subjective Complaints of Physical Pain

Ms. Richardson argues that the ALJ erred by not fully crediting her subjective complaints of pain. (Pl. Br. 34-36). The ALJ noted Ms. Richardson's statements that, without her medication "her pain would be at a 10 out of 10 in severity where she would need to go to the hospital." (R. 40). Ms. Richardson admitted that she did not take her medication on the day of the hearing so she could "be functional" at the hearing. (R. 36). Ms. Richardson argues that she meant that large doses of codeine (Percocet) and muscle relaxers would not allow her the mental clarity to testify. (Pl. Br. 35-36). Nonetheless, despite not taking her medication, Ms. Richardson was able to attend the hearing and participate without going to the hospital. For this reason, among others, the ALJ found that her subjective complaints of disabling pain were only partially credible.

Ultimately, "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Credibility determinations are entitled to "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007) (citing *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state her reasons for accepting or discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where this has been done, a reviewing court will defer to the ALJ's credibility determination.

Given conflicting evidence, the ALJ was entitled to conclude that Ms. Richardson was overstating the extent of her pain symptoms.

### iii. Mental Limitations

The ALJ found that Ms. Richardson has moderate difficulties with concentration, persistence, or pace. (R. 33-34). Ms. Richardson's RFC incorporates several limitations regarding her mental condition:

> [Ms. Richardson] would be off task 5 percent of the work day because of pain and lapses in concentration; would be absent one day per month because of the impairments and the effects of medication; would be able to understand, remember, and carry out simple instructions; would be able to adapt to routine changes in the work place that are occasional and that are gradually introduced.

(R. 34-35). Additionally, the RFC finds that Ms. Richardson must avoid even moderate exposure to hazards because of side effects of medication. (R. 38). Ms. Richardson argues that the ALJ erred by not properly including limitations related to her mental health in the RFC and in the hypotheticals to the VE. (Pl. Br. 36-41).[3]

She makes a comparison to *Ramirez v. Barnhart*, where the ALJ's RFC (and hypotheticals) did not address specific mental-health limitations. 372 F.3d 546 (3d Cir. 2004). In *Ramirez*, the ALJ found that the claimant "often" suffers from "deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere)." *Id.* at 549. The ALJ included several limitations in the claimant's RFC. She was limited to

> sedentary work in a well-ventilated environment, with no exposure to dust, fumes, pets, animals, chemicals, or temperature extremes; occasional breaks necessary for the use of an inhaler or pump; no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls.

*Id.* at 554. The only limitations that related to the *Ramirez* claimant's mental impairments were limitations to simple tasks, the restriction on travel, and

---

[3] The question of whether the ALJ incorporated mental-health-based limitations into Ms. Richardson's RFC significantly overlaps with whether the ALJ's hypotheticals to the VE addressed her mental-health concerns. This is because the ALJ read the entire RFC to the VE and the VE's responses were based on the RFC. (R. 87-89).

15

phone privileges. These related to claimant's anxiety disorder, which was largely attributable to her "need to feel that she has to be reasonably protective of her children." *Id.* at 555. The RFC in *Ramirez* did not adequately incorporate the claimant's deficiencies in pace, which had been recognized by the ALJ. *Id.* at 554. This was particularly important because the representative jobs identified for the claimant (assembler, packer, inspector) would entail daily production quotas that would require claimant to maintain a certain pace throughout the day. *Id.* In *Ramirez*, the court found that the accommodations in the RFC would not remedy the claimant's deficiency in concentration and pace, and that was the reason for remand. *Id.* at 555.

In this case, however, ALJ Merrill found that Ms. Richardson has "a moderate limitation in concentration, persistence, or pace." (R. 33-34). Accordingly, the ALJ added appropriate limitations to the RFC regarding her time off-task, absences, ability to perform only simple tasks, and a limited ability to adapt to change. (R. 34-35). Thus this ALJ did not commit the error attributed to the ALJ in *Ramirez*. 372 F.3d at 554. Moreover, this Circuit has regularly found that a RFC limiting claimant to simple, unskilled work is adequate to account for moderate limitations in concentration, persistence, and pace. *See, e.g., Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655-56 (3d Cir. 2010); *Menkes v. Astrue*, 262 F. App'x 410, 412-13 (3d Cir. 2008); *McDonald v. Astrue*, 293 F. App'x 941, 946-47 (3d Cir. 2008).

### 4. The ALJ's Step Five Evaluation

At step five, the ALJ considered Ms. Richardson's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines, and determined that Ms. Richardson is able to perform other jobs existing in significant numbers in the national economy. (R. 40-41). The ALJ relied on the testimony of a VE to identify representative unskilled jobs that Ms. Richardson could perform within the limitations of her RFC. (R. 41-42). Ms. Richardson argues that the ALJ erred at step five by not properly conveying all of the credibly established limitations to the VE. (Pl. Br. 37).

16

This challenge, in many ways, duplicates Ms. Richardson's challenge to the RFC. The underlying argument is that the ALJ's ultimate finding rests on an RFC that overstated her abilities. The ALJ's RFC determination, however, was supported by substantial evidence, as established in subsection II.C.3.

It is true of course that a hypothetical question posed to a VE must reflect all of the claimant's limitations that are supported by substantial evidence, if the VE's opinion is to be valid. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."). That does not mean, however, that the VE must be asked to opine on all limitations *alleged* by a claimant. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. Instead ... hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments ... that are medically established .... [Thus, t]he ALJ must accurately convey to the vocational expert all of claimant's *credibly established limitations*.").

At the hearing, the ALJ asked the VE to consider a hypothetical individual with Ms. Richardson's age, education, vocational history, and RFC. (R. 87-88). The ALJ read the entire RFC to the VE. (*Id.*). Since the RFC is supported by substantial evidence, the ALJ accurately portrayed Ms. Richardson's credibly established limitations to the VE. Therefore, the ALJ did not err at step five.

### III. CONCLUSION

For the foregoing reasons, Ms. Richardson has failed to demonstrate that the ALJ's decision was not supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I uphold the ALJ's denial of Ms. Richardson's claims. The ALJ's decision is thus AFFIRMED.

An appropriate order accompanies this opinion.

Dated: December 22, 2017

                                                      **KEVIN MCNULTY**
                                                      **United States District Judge**